### DYE ET AL. v. WAGNER.

1. **Contract: DAMAGES: INSTRUCTION.** Facts stated which were held not to justify the giving of an instruction with respect to the measure of damages for a breach of contract.

*Appeal from Polk Circuit Court.*

FRIDAY, OCTOBER 25.

ACTION for breach of contract to furnish mill power. The defendant is the owner of a steam engine, which he uses in

Dye v. Wagner.

connection with a plow and wagon shop in the city of Des Moines. Having more power than he desired to use himself, he entered into a contract with the plaintiffs to furnish them power to run a corn-sheller, corn-burr and hominy mill. By the contract the plaintiffs leased from the defendant a part of a lot adjoining his shop for the term of five years, on which to erect their mill, agreeing to pay as rent one hundred and fifty dollars a year. For the power the plaintiffs agreed to pay twenty-five cents per hour, and give the cobs that should come from the sheller. The defendant was not to be required to furnish power for less than half a day at a time. They erected their mill, and commenced work July 28, 1876. On the 31st day of August the plaintiffs settled with the defendant, and paid him for the power which they had had, but not without considerable controversy as to the number of hours for which plaintiffs should pay, and the defendant was not paid as much as he claimed was due. No complaint appears to have been made at the settlement by the plaintiffs that the defendant had not furnished power whenever called upon, and the amount called for. The evidence shows, however, that, previous to that time, the plaintiffs sometimes complained of not having steam enough. On the 31st day of August the plaintiffs stopped work, because they had nothing to do. On the 4th of September they desired to commence again, and so notified the defendant, but no power was furnished. It appears from the evidence that the parties differed in their construction of the contract, the defendant claiming that he was entitled to pay for half a day if he furnished power for any part of half a day, and he says he was willing to run under that construction of the contract.

On the 5th of September, an understanding having been reached with one of the plaintiffs, the defendant served a written notice on them that he was ready to furnish power. Soon afterward the plaintiffs went to defendant and asked him to furnish power so that they could commence running their mill at 7 o'clock the next morning. The defendant told

them he could not, because his engine was out of order. The defendant says that he also told them that he could get ready by noon of the next day. The evidence shows that the engine was broken on the 6th day of September, by reason of a screw being drawn too tight, but was repaired by noon of the next day. After the demand was made by plaintiffs, at the time the engine was broken, no further demand was made by them, nor request to hitch on, nor opportunity given to defendant to furnish them power. No surrender was made of the lease, and no communication of any kind appears to have taken place between plaintiffs and defendant until after the commencement of this action, October 12th of that year. Soon afterward the mill was sold to and removed by one Williams. The plaintiffs claim damages for the failure and refusal to furnish power, whereby their trade was lost and the mill rendered worthless. There was a trial by jury, and verdict and judgment for the plaintiffs for one thousand four hundred dollars. The defendant appeals.

*Bannister & Phillips* and *Phillips, Goode & Phillips*, for appellant.

*Barcroft, Given & Drabelle* and *James H. Stevenson*, for appellee.

ADAMS, J.—The defendant assigns as error the giving of an instruction in these words: "If the jury find from the evidence that on or about the 1st of September, 1876, the defendant failed or refused to furnish any more power to the plaintiffs under the contract without the fault of the plaintiffs, and the plaintiffs were damaged thereby, then you will find for the plaintiffs on the first count of the petition, and the measure of damages will be the difference in value of the unexpired term of the plaintiffs' lease and contract with the defendant, and the sum agreed to be paid by them for the use and rent of said premises and power."

1 CONTRACT: damages: instruction.

The question presented is as to whether the facts of the

case, as shown by the undisputed evidence, are such as to justify the giving of this instruction. In our opinion they are not. The instruction is based upon the theory that the jury might find from the evidence that the failure and refusal were such that the plaintiffs were justified in considering the contract as ended. As to what precisely was said by the defendant about not furnishing power there is some conflict of evidence. But what is the fact as to his refusal as shown by the testimony of the plaintiffs themselves, and by evidence that is not disputed? There is no pretense that any call was made by the plaintiffs upon the defendant for power that was not complied with until the 1st of September, 1876. Indeed, no claim is made in the petition by reason of any failure previous to that time. The language of the petition is "that on and ever since the 1st day of September, 1876, the defendant has wilfully and wrongfully failed, refused and neglected to furnish to plaintiffs power to run said mill." We need not then look for any refusal or neglect prior to the 1st of September, 1876. The plaintiffs ceased work on the 31st day of August, because they had nothing to do. One of the plaintiffs says, "we had no occasion to operate the mill the next day." "On the 2d day of September," he says, "we did not care about grinding," and he says the same of the third day. On the fourth he went to the defendant and told him that he had some grists in the mill.

There is some evidence tending to show that the defendant refused to furnish power, but put his refusal upon the ground that plaintiffs had refused to pay according to the contract. Whether the defendant's refusal was justifiable we shall not stop to inquire. For the purposes of this opinion it may be conceded that it was not.

It may be conceded that the plaintiffs became entitled to damages for failure to furnish power that day. But that would be the extent of the recovery for that failure. This is so, because afterward, upon the same day, the defendant and one of the plaintiffs came to an understanding in regard

to future payments, and on the fifth the defendant served notice of his readiness to furnish power, and immediately thereafter, probably on the sixth, the plaintiffs notified him that they wanted to start their mill the next morning. Now, if the defendant had informed them that he would furnish power the next morning, or had simply said nothing, it is clear that the plaintiffs would have had no cause of action at that time, unless it might be for the failure for one day. But the case is not different from what it would have been if he had so informed them, or simply said nothing. He had already notified them of his readiness to furnish power. The difference of understanding, as to payments, had been adjusted. The notice was good until revoked, and it never was revoked. It is true that upon the day he was called upon a part of the engine had broken, and could not be repaired before the next day. The defendant, therefore, could not comply strictly with plaintiffs' request, and he told the plaintiffs that he could not; but that was not such a refusal to furnish power as could give a right to such damages as the instruction allows. And yet there was no other refusal at that time, or afterward. Nothing else transpired as a foundation of the plaintiffs' claim. It is true, no power was furnished, but the plaintiffs never indicated their readiness to hitch on.

Considerable evidence was introduced by the plaintiffs to show that the defendant expressed to others an intention not to furnish power. It is claimed by the defendant that his statements, whatever they were, were made with reference to the fact that the plaintiffs refused to pay according to the contract, and that that difficulty was adjusted prior to the 5th of September, when he served the notice above mentioned. Whether the defendant is correct or not, his liability must be controlled by what transpired between him and the plaintiffs after the 1st of September, and what that was we have endeavored to set forth. We think the court erred in allowing as damages the value of the unexpired term of the lease, etc.

REVERSED.